# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| TAYLOR BARRETT; CHASE PINDER, | ) <br> ) <br> ) |
| PLAINTIFFS, | ) <br> ) CIVIL ACTION CASE NUMBER: |
| v. | ) <br> ) 5:25-cv- |
| TELEDYNE BROWN ENGINEERING, INC., | ) <br> ) <br> ) PLAINTIFFS DEMAND A TRIAL <br> ) BY STRUCK JURY |
| DEFENDANT. | ) |

## COMPLAINT

## **INTRODUCTION**

1. This is an employment discrimination action in which the Plaintiffs, Taylor Barrett and Chase Pinder (hereinafter "Plaintiffs" or "Plaintiff Barrett and/or Plaintiff Pinder"), allege that the Defendant, Teledyne Brown Engineering, Inc. (hereinafter "Teledyne"), violated the anti-retaliation provision of the False Claims Act, 31 U.S.C. § 3730(h) (FCA).

2. Plaintiffs allege Defendant Teledyne retaliated against the Plaintiffs for engaging in protected activity in furtherance of an action under the FCA by

terminating their employment in violation of the FCA.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction, pursuant to 28 U.S.C. § 1331, as this action arises under federal law, in particular the anti-retaliation provisions of the federal FALSE CLAIMS ACT, 31 U.S.C. § 3730(h).  The FCA itself, at 31 U.S.C. § 3732(a), specifically confers jurisdiction on this Court for actions brought, pursuant to 31 U.S.C. § 3730(h).

4. This Court has personal jurisdiction over Defendant as it can be found in, and is authorized to transact business in, the Northern District of Alabama.

5. This judicial district is an appropriate venue under 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391 because the Defendant transacts business in and a substantial part of the events giving rise to the suit happened in this judicial district.

## PARTIES

6. The Plaintiffs, Barrett and Pinder, are adults and residents of the State of Alabama.

7. Teledyne is a foreign corporation formed in the State of Delaware, and, at all times material hereto, did business in Huntsville, Madison County, Alabama.

## FACTUAL BACKGROUND

8. Teledyne is a company that provides engineering services and manufacturing services to customers, including the United States government.

9. According to its website, Teledyne provides full-spectrum systems engineering, integration, manufacturing, and lifecycle sustainment solutions to the maritime, aerospace, defense, energy and environment markets; and has expertise in systems integration, technology development, hardware, design, prototype development, system test and evaluation, advanced manufacturing, performance-based logistics solutions, and operations and maintenance.

10. On or about March 20th, 2023, Plaintiff Barrett began working as a non-destructive testing technician for Teledyne.

11. Part of Plaintiff Barrett's job was testing welding samples, including radiography, for NAVSEA welding certification for aluminum.

12. On or about May 10th, 2021, Plaintiff Pinder began working as a welder for Teledyne.

13. Sam Tralongo (hereinafter "Tralongo"), who is not a party to this case, worked for Teledyne as a welder in 2024.

14. Alex Headrick (hereinafter "Headrick"), who is not a party to this case, worked for Teledyne as a welder in 2024.

15. Jake Hostetler (hereinafter "Hostetler"), who is not a party to this case, worked for Teledyne as a lead-welder in 2024.

16. Mark Fahlgren (hereinafter "Fahlgren"), who is not a party to this case, worked for Teledyne as a welding engineer in 2024.

17. Chad Egelsky (hereinafter "Egelsky"), who is not a party to this case, worked for Teledyne as a welding engineer in 2024.

18. Jeff Holley (hereinafter "Holley"), who is not a party to this case, worked for Teledyne as Director of Operations in 2024.

19. Rob Pinell (hereinafter "Pinell"), who is not a party to this case, worked for Teledyne as Responsible NDT Level 3 in 2024.

20. In 2024, Teledyne worked on a project for a contract with the United States Navy manufacturing submersible boats (hereinafter "boats") that required welding by welders with NAVSEA welding certification for aluminum.

21. A testing proctor was used to verify that the welder seeking NAVSEA welding certification followed the required procedures.

22. A "route sheet" accompanies test samples and stays with them and is later provided to the Navy with each boat produced.

23. As part of Plaintiff Barrett's job, she reviewed and tested welding samples submitted by welders for NAVSEA welding certification for aluminum.

24. In about August, 2024, Alex Headrick had submitted multiple welding samples to Plaintiff Barrett for NAVSEA welding certification for aluminum and had failed.

25. Mark Fahlgren and Chad Egelsky acted as proctors for welding tests in the past to ensure proper procedures were followed.

26. On or about August 26th, 2024, Jake Hostetler acted as proctor of the test by Headrick.

27. Hostetler submitted 4 sample welds that he attributed to Headrick to Plaintiff Barrett for examination seeking NAVSEA welding certification.

28. On or about September 2nd, 2024, Plaintiff Barrett determined that of the 4 plates submitted, 2 plates failed and 2 passed.

29. Plaintiff Barrett became concerned that the samples that passed were not welded by Headrick due to dissimilarities between the 2 sets of submitted samples, and between the 2 of the submitted samples and those previously submitted by Headrick.

30. Plaintiff Barrett asked Plaintiff Pinder and Tralongo to look at the welds.

31. Plaintiff Pinder and Tralongo also became concerned that the samples that passed were not welded by Headrick.

32. Plaintiff Pinder attempted to locate the samples but they were not with the route sheet paperwork for the certification process as was standard procedure.

33. He found the samples submitted in Hostetler's toolbox.

34. Plaintiff Pinder believed the samples were prior samples welded by him.

35. Plaintiff Pinder took photos of the samples with his phone, replaced the samples in Hostetler's toolbox and sent the photos to Plaintiff Barrett and Tralongo.

36. Tralongo informed Holley about his, Plaintiff Barrett's and Plaintiff Pinder's belief that the plates submitted were falsely represented as welded by Headrick.

37. Holley replied that he would look into it and take care of it.

38. Plaintiff Pinder showed Holley the location of the route sheets for the test samples in question.

39. Holley told Plaintiff Pinder that he would look into it and take care of it.

40. Holley instructed Plaintiff Barrett not answer any questions by Tralongo about the welding samples submitted by Headrick.

41. Holley told Plaintiff Barrett that the allegations by Tralongo were investigated and no evidence found to support them.

42. Although friendly in the past, Hostetler and Headrick became unfriendly and stopped communicating with Plaintiff Pinder and Tralongo except when absolutely necessary.

43. Fahlgren told Barrett that the 4 welding samples submitted by Headrick were destroyed.

44. Plaintiff Barrett and Plaintiff Pinder located the x-rays of the samples submitted by Hostetler for Headrick and compared them to prior samples submitted by Plaintiff Pinder and found them to be an exact match.

45. On or about September 15th, 2024, Plaintiff Barrett completed an anonymous

online report of the falsification of the welding samples to the United States Department of Defense.

46. On or about September 23rd, 2024, Tralongo provided a timeline of events regarding the falsification of the test samples with photos of x-rays of the welds submitted by Hostetler for Headrick, and turned in his notice of resignation after 2 weeks.

47. On or about September 23rd, 2024, Plaintiff Barrett told Holley that she believed that the samples submitted by Hostetler for Headrick were not welded by Headrick, and that it appeared that the test numbers on the samples had been changed.

48. On or about September 23rd, 2024, Plaintiff Barrett told Pinell that she believed that the samples submitted by Hostetler for Headrick were not welded by Headrick and sent photos of the welds.

49. On or about September 23rd, 2024, at Pinell's request, Plaintiff Barrett retrieved x-rays of the samples welded by Plaintiff Pinder that matched the welds later submitted by Hostetler for Headrick and forwarded those to Pinell.

50. In about November, 2024, Holley announced that Hostetler would remain a welder, but Holley would take over as welding supervisor.

51. On or about February 6th, 2025, Teledyne terminated the employment of both Plaintiff Barrett and Plaintiff Pinder.

## COUNT I
## RETALIATION –TERMINATION IN VIOLATION OF
## THE FALSE CLAIMS ACT

52. For purposes of context, Barrett and Pinder adopt and incorporate the facts set forth above.

53. Defendant is an employer and receives federal funds within the meaning of that term under the False Claims Act, 31 U.S.C. § 3729 *et seq*.

54. Plaintiffs are employees who engaged in lawful acts as concerns and inquiries regarding falsification of welding samples which were valid and constitute protected conduct with the meaning of 31 U.S.C. § 3730(h) (the "Protected Conduct").

55. Plaintiffs made numerous attempts to point out the falsification to the appropriate persons at Teledyne and did their due diligence in personally confirming the falsification occurred.

56. Defendant knew that Plaintiffs had engaged in and were in the process of engaging in Protected Conduct.

57. Plaintiffs were terminated near, in terms of time, to when they investigated and reported the falsification.

58. The temporal relation between Defendant learning of, investigating and reporting the falsification and Plaintiffs' termination support a reasonable

conclusion that Teledyne was aware of the possibility of litigation under the False Claims Act and other federal statutes and regulations.

59. Plaintiffs were terminated because they pointed out fraudulently reported welding samples rather than compounding the fraud and turning a blind eye and approving the samples.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs request this Court enter a judgment against the Defendant, pursuant to 31 U.S.C. § 3730(h), for judgment and relief against the Defendant as follows:

a) Accepting jurisdiction over this matter;

b) Declaring that Defendant engaged in conduct unlawful under 31 U.S.C. § 3730(h);

c) Entering an Order requiring Defendant to reinstate Plaintiffs with the same seniority status that they would have had but for the above-pled retaliation;

d) Awarding Plaintiffs back pay, as calculated, times two;

e) Awarding Plaintiffs interest on the back-pay award;

f) Awarding Plaintiffs compensatory damages;

g) Awarding Plaintiffs pre- and post-judgment interest as allowed by law;

h) Awarding Plaintiffs all litigation costs incurred, including reasonable attorney fees, and

i) Awarding Plaintiffs such other, different and further relief, including equitable, as this Court deems just and proper.

**PLAINTIFFS DEMAND A TRIAL BY STRUCK JURY.**

RESPECTFULLY SUBMITTED,

___s/ B. Scott Shipman___
B. Scott Shipman (ASB-8647-S82B)
ATTORNEY FOR PLAINTIFFS

**OF COUNSEL FOR PLAINTIFFS:**
Shipman & Associates, P.C.
218 West Market Street
Athens, AL 35611
256-232-5262
shipman@shipmanlaw.org

**SERVE THE DEFENDANT VIA PROCESS SERVER:**

Teledyne Brown Engineering, Inc.
C/O Corporation Service Company, Inc.
641 South Lawrence Street
Montgomery, AL 36104